Section 194.301 provides that in proceedings before the VAB or the circuit court, the value of property must be determined by an appraisal methodology that complies with the criteria set forth in section 193.011[4] and with professionally accepted appraisal practices:
(1) In any administrative or judicial action in which a taxpayer challenges an ad valorem tax assessment of value, the property appraiser's assessment is presumed correct if the appraiser proves by a preponderance of the evidence that the assessment was arrived at by complying with s. 193.011, any other applicable statutory requirements relating to classified use values or assessment caps, and professionally accepted appraisal practices, including mass appraisal standards, if appropriate. However, a taxpayer who challenges an assessment is entitled to a determination by the value adjustment board or court of the appropriateness of the appraisal methodology used in making the assessment. The value of property must be determined by an appraisal methodology that complies with the criteria of s. 193.011 and professionally accepted appraisal practices. The provisions of this subsection preempt any prior case law that is inconsistent with this subsection.
*231 (2) In an administrative or judicial action in which an ad valorem tax assessment is challenged, the burden of proof is on the party initiating the challenge.
(a) If the challenge is to the assessed value of the property, the party initiating the challenge has the burden of proving by a preponderance of the evidence that the assessed value:
1. Does not represent the just value of the property after taking into account any applicable limits on annual increases in the value of the property;
2. Does not represent the classified use value or fractional value of the property if the property is required to be assessed based on its character or use; or
3. Is arbitrarily based on appraisal practices that are different from the appraisal practices generally applied by the property appraiser to comparable property within the same county.
(b) If the party challenging the assessment satisfies the requirements of paragraph (a), the presumption provided in subsection (1) is overcome, and the value adjustment board or the court shall establish the assessment if there is competent, substantial evidence of value in the record which cumulatively meets the criteria of s. 193.011 and professionally accepted appraisal practices. If the record lacks such evidence, the matter must be remanded to the property appraiser with appropriate directions from the value adjustment board or the court, and the property appraiser must comply with those directions.
(c) If the revised assessment following remand is challenged, the procedures described in this section apply.
(d) If the challenge is to the classification or exemption status of the property, there is no presumption of correctness, and the party initiating the challenge has the burden of proving by a preponderance of the evidence that the classification or exempt status assigned to the property is incorrect.
§ 194.301, Fla. Stat. (2013) (emphasis added).[5]
In an effort to fulfill the State's responsibility to secure a just valuation for ad valorem tax purposes and to provide uniform assessment throughout the state, see sections 195.0012 and 195.002, Florida Statutes (2013), Florida's Department of Revenue ("DOR") is required to establish and promulgate standard measures of value ("DOR Guidelines") to be used by property appraisers in all counties. See § 195.032, Fla. Stat. (2013). These standard measures of value "shall assist the property appraiser in the valuation of property and be deemed prima facie correct, but shall not be deemed to establish the just value of any property." Id. For purposes of this appeal, we accept the Property Appraiser's suggestion, without so holding, that the DOR Guidelines are reflective of professionally accepted appraisal practices to the extent that they specifically direct certain action by the Property Appraiser.
There are three recognized approaches to property valuations: cost, income, and market or sales-comparison. Havill v. Scripps Howard Cable Co. , 742 So.2d 210, 212-13 (Fla. 1998). In the instant case, Darden and the Property Appraiser agreed that the income approach was not appropriate for valuing Darden's TPP. Darden's valuation expert utilized the market or sales-comparison approach in arriving at his valuation. By contrast, *232 the Property Appraiser utilized a cost approach. Notably, Darden does not dispute that the use of a cost approach in the instant case was permissible under DOR Guidelines.
DOR Guidelines, which were admitted into evidence, recite that the "cost approach to value" involves the consideration of the reproduction or replacement cost of the subject TPP less the extent to which the value has been reduced by deterioration and obsolescence:
The Cost Approach to value involves consideration of :
(A) The reproduction or replacement cost is the cost of replacing reproducible property with new property of similar utility, or of reproducing the property at its present site and at present price level, less the extent to which the value has been reduced by deterioration and obsolescence.
(B) The historical or original cost is sometimes used as a starting point to the calculation of value. An appropriate appraisal depreciation rate reflecting economic, physical, and functional obsolescence must be determined and applied, as well as an appropriate trending factor to capture price changes from date of acquisition. (This approach may not apply to all assets. See Section G, Replacement Cost New Less Depreciation Calculation.)
(C) The appraiser should consider the cost of any asset at the appropriate level of trade-the manufacturing level, the wholesale level, and the retail level-and value the property according to the trade level for which it is utilized. Property normally increases in value as it progresses from the manufacturers' level (the lowest market value) to the retail level of trade (the highest level of trade). At each level a value is added to calculate a selling price which recovers for the current owner all direct costs to manufacture and install and indirect costs of overhead and profit. For example, the trade level concept must be considered when a manufacturer, who is operating at more than one trade level, transfers property to a subsidiary without the normal profit and costs. In order to maintain equity and uniformity in assessments of comparable property, the asset should be valued at a cost had the asset been acquired in an arm's length transaction from an outside supplier.
Fla. Dep't of Rev., Standard Measures of Value: Tangible Personal Property Appraisal Guidelines 40 (1997) (emphasis added).
Here, the Property Appraiser presented sufficient evidence that its determination of (1) the reproduction or replacement cost of Darden's TPP, and (2) the extent which its value has been reduced by deterioration, was consistent with DOR Guidelines. Thus, our focus is on the Property Appraiser's calculation of the reduction of value of Darden's TPP resulting from obsolescence.
The DOR Guidelines reflect that obsolescence should be considered when appraising any type of property. Obsolescence is defined as the reduction in value due to technological changes or innovation, changes in demand for a product, or other causes:
When the loss in value is due to technological change or innovation, it is usually referred to as functional obsolescence . It can be recognized by a lack of utility in the property, the location of the property, or inadequate capacity in use. Functional obsolescence can sometimes be overcome by remodeling or reconditioning.
When the loss in value is due to change in product, demand, or location, it is customarily referred to as economic *233 obsolescence . This type of obsolescence is brought about by external factors and cannot be overcome. Obsolescence of personal property is not too difficult to recognize, but it is difficult to accurately measure. Adequate market data to measure obsolescence cannot always be found for all types of personal property.
Id. at 41 (emphasis added). DOR Guidelines direct the Property Appraiser to "look to the market" for any change of value resulting from obsolescence, and specifically recite that "[t]he appraiser should always consider what an informed purchaser would be willing to pay for the property as an installed operating unit when employed at its highest and best use." Id. Significantly, the DOR Guidelines do not specify the manner in which obsolescence is to be calculated so as to ultimately determine just valuation.
At trial, the Property Appraiser presented evidence that it made continuous efforts to "look to the market" for changing values in TPP from obsolescence by having weekly meetings of appraisers and auditors, going into the field, studying sales and life years of assets, utilizing its own Life Assignment Guide and Present Worth Table, and making constant adjustments to those tables. Critically, the Property Appraiser did not present testimony that the methodology it utilized in calculating obsolescence complied with professionally accepted appraisal practices.
In rebuttal, Darden presented expert testimony that the Property Appraiser's methodology was not consistent with professionally accepted appraisal practices. Darden's expert suggested, inter alia, that the Property Appraiser had failed to sufficiently examine comparable sales when "looking to the market."
Pursuant to section 194.301(2)(a), the Property Appraiser, as the party challenging the VAB assessment, had the burden of proving by a preponderance of the evidence that the VAB's assessed value did not represent the just value of Darden's TPP. We conclude that there was competent, substantial evidence to support the trial court's determination that the VAB's valuations of Darden's TPP for 2013 and 2014, respectively, were incorrect and less than the just or fair market value.
However, because the Property Appraiser failed to present evidence that it calculated obsolescence in accordance with professionally accepted appraisal practices, we conclude that the Property Appraiser failed to meet its additional burden, set forth in section 194.301(2)(b), of showing that there was competent, substantial evidence in the record to support the trial court's valuation of Darden's TPP for 2013 and 2014. That section expressly requires that the value found by the trial court be based on evidence in the record that established compliance with professionally accepted appraisal practices.[6] See also Crapo v. Vulcan Materials Co. , No. 012013CA001001, 2016 WL 4366935 (Fla. 8th Cir. Ct. July 11, 2016) (finding that where property appraiser did not account for economic obsolescence in accordance with professionally accepted appraisal practices, property appraiser failed to meet its burden under section 194.301 ).
*234 Section 194.301(2)(b) further provides that where the record lacks such evidence, the matter must be remanded to the Property Appraiser with appropriate directions. Here, the trial court should have remanded this cause to the Property Appraiser with directions that in determining the just valuation of Darden's TPP for 2013 and 2014, obsolescence must be calculated in accordance with professionally accepted appraisal practices. Accordingly, we reverse and remand for further proceedings consistent with this opinion.[7]
REVERSED and REMANDED.
GROSSHANS and SASSO, JJ., concur.

Darden does not dispute that the Property Appraiser considered the criteria set forth in section 193.011.

The statutes cited in this opinion were the same for both 2013 and 2014.

Our opinion should not be construed to require the Property Appraiser to present an independent, or outside, expert witness to testify that its valuations comply with professionally accepted appraisal practices. Furthermore, we recognize, as did the parties below, that TPP appraisers must exercise their professional judgment and discretion throughout the appraisal process. However, section 194.301 reflects an effort by the Legislature to ensure that they exercise that professional judgment and discretion in accordance with professionally accepted appraisal practices.

We find the other issues raised on appeal by Darden to be without merit.